UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kristen Reinwald,

    Plaintiff,

-v-                              Case No. 2:08-cv-0689

                                  Judge Michael H. Watson

The Huntington National Bank,

    Defendant.

## OPINION AND ORDER

Plaintiff asserts a claim under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615(a)(1) and (2). Defendant moves for summary judgment. (Doc. 22). For the reasons that follow, the Court grants defendant's summary judgment motion.

### I. Facts

Plaintiff, Kristen Reinwold, resides in Franklin County, Ohio. Defendant, The Huntington National Bank ("HNB") is an employer within the meaning of the FMLA.

Reinwald began working for HNB as a customer service associate on May 10, 2004. Along with at least fifty other employees on her floor, Reinwald answered telephone calls from HNB's non-business customers, and assisted them with banking issues. On average she would talk with more than one hundred customers during a work day.

Reinwald suffers from endometriosis.[1] Reinwald's pain from endometriosis began to increase in late 2005. Reinwald sought treatment from gynecologist Dr. Donald Bryan, who performed surgery on Reinwald on December 21, 2005. Dr. Bryan indicated on one leave form that Reinwald would suffer intermittent episodes of pain from endometriosis which would render her incapacitated for one to three days at a time from February 10, 2006 through February 21, 2006. Reinwald Dep. Ex. 33.

HNB maintains that it progressively disciplined Reinwald throughout her employment with HNB. Howard Decl. ¶ 16. On May 1, 2006, HNB gave Reinwald a progressive discipline warning for a series of non-FMLA absences. Reinwald received another progressive discipline warning on May 22, 2006, concerning other matters unrelated to the FMLA, including failure to make sales goals, taking extended lunch and rest breaks without permission, engaging in extended personal conversations during work hours, eating food and reading books at her work station, being rude and unprofessional to customers, and leaving her work station unexpectedly without informing her supervisor. Reinwald acknowledges that HNB disciplined her for attendance and performance problems unrelated to FMLA leave, and that HNB had warned her that it might terminate her employment if the attendance and performance problems continued. She also concedes that "everyone was held to the same standard." Reinwald Dep. at 191.

Reinwald was scheduled to work at HNB on Saturday, June 10, 2006, Monday, June 12, 2006, and Tuesday, June 13, 2006. Reinwald avers that during this time

---

[1] Endometriosis is a condition in which tissue similar to the lining of the uterus is found elsewhere in the body. Pelvic pain is the most common symptom of endometriosis. http://www.endometriosis.org/endometriosis.html. See also http://www.mayoclinic.com/health/endometriosis/DS00289.

period she was unable to work because she was experiencing severe pain as a result of a Lupron injection she received to treat her endometriosis. Reinhold Dep. ¶ 6. She states that she called the HNB attendance line on each day and left messages that she was unable to work because of the pain and that she was requesting FMLA leave. *Id.* HNB designated June 10, 2006 and June 12, 2006 as "Unpaid FMLA" in Reinwald's employment records. Reinwald Dep. Ex. 45.

Reinwald's cell phone records indicate that she placed three one-minute calls to HNB's attendance line on June 13, 2006. In her deposition, Reinwald explains that she called the attendance line three times on that date because the cell phone she was using was not getting good reception, had a bad antenna, and sometimes dropped calls. Reinwald Dep. at 219-20. HNB states that it has no record of receiving Reinwald's calls on June 13, 2006. Howard Decl. ¶¶ 7-9.

Reinwald returned to work at HNB on June 14, 2006. About one hour after her arrival, she was called into a private office to meet with her supervisor, Melissa Femia and Sally Howard of Human Resources. Reinwald was told that her latest no-call/no-show was unacceptable, and that her employment was being terminated. Reinwald responded that she could prove that she called in, and asked to use a computer to access her cell phone records on the internet. Howard denied Reinwald's request, but told her that if she could produce proof, HNB might reinstate her employment. During the entire conversation, Reinwald made no mention of the reason for her absence from work on June 13, 2006. Howard and Femia similarly made no inquiry as to the reason Reinwald did not show up for work that day. The subject of Reinwald's medical condition was not brought up or discussed at the termination meeting.

The next time HNB heard from Reinwald was when it received her attorney's demand letter on May 27, 2008. Reinwald's cell phone records from June 13, 2006 were included with the letter.

Reinwald filed the instant lawsuit in the Franklin County, Ohio Court of Common Pleas on June 13, 2008, asserting a single count under the FMLA. HNB timely removed the action to this Court on the basis of federal question jurisdiction.

## II. Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A factual dispute is genuine if the evidence on which the non-moving party relies could convince a reasonable juror to return a verdict in favor of the non-moving party. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). A factual issue is material if its resolution could affect the disposition of the case under the governing substantive law. *Id.*

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 794 (6th Cir. 2004). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Gues v. Leis*, 255 F.3d 325, 335 (6th Cir. 2001) (quoting *Anderson*, 477 U.S. 242, 252 (1986)). Summary

judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001) *(citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

### III. Discussion

HNB advances essentially three arguments for summary judgment: (1) Reinwald cannot show that she was absent from work on June 13, 2006 as a result of a serious health condition; (2) Reinwald cannot demonstrate that she timely provided HNB notice that she was taking FMLA leave; and (3) HNB's decision to terminate Reinwald's employment was made in good faith and was based upon particularized facts. The Court will briefly review the basic principles of the FMLA law, and then address HNB's specific grounds for summary judgment.

The purposes of the FMLA include:

> (1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity;
>
> (2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition; [and]
>
> (3) to accomplish the purposes described in paragraphs (1) and (2) in a manner that accommodates the legitimate interests of employers[.]

29 U.S.C. § 2601(b)(1), (2), and (3). "The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir. 2005) *(quoting* 29 U.S.C. § 2612(a)(1)(D)).

The FMLA provides for relief under two distinct theories: interference under 29 U.S.C. § 2615(a)(2), and discrimination or retaliation under 29 U.S.C. § 2615(a)(2). Reinwald purports to assert her claim under both theories.

To prevail on a claim based on interference the plaintiff must establish the following:

1. she was an eligible employee;

2. the defendant was an employer as defined under the FMLA;

3. she was entitled to leave under the FMLA;

4. she gave the defendant notice of her intention to take FMLA leave; and

5. the employer denied FMLA leave/benefits to which she was entitled.

*Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

An FMLA retaliation claim based upon circumstantial evidence is subject to the burden shifting analysis set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *Edgar*, 443 F.3d at 508. Therefore, to establish a *prima facie* case based on circumstantial evidence, a plaintiff must demonstrate that:

1. she availed herself of a protected right under FMLA;

2. she was adversely affected by an employment decision; and

3. there was a causal connection between the employee's protected activity and the employer's adverse employment action.

*Id.*

Upon establishing a *prima facie* case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for discharging the employee. *Id.* (quoting Skrjanc v. *Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001)). If the defendant proffers a legitimate reason for termination, the plaintiff must show that the

reason was actually a "pretext to mask discrimination." *Skrjanc*, 272 F.3d at 315.

An employee may prove pretext by providing "sufficient evidence from which the jury [could] reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). Pretext can be established by showing that the employer's reason:

1. had no basis in fact;

2. did not actually motivate the decision to terminate; or

3. was insufficient to warrant the decision to terminate.

*Manzer*, 29 F.3d at 1084. "A plaintiff must do more than simply impugn the legitimacy of the asserted justification for her termination; in addition, the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir. 1999), citing Manzer, 29 F.3d at 1083. Plaintiff "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

### A. Serious health condition

HNB first argues that Reinwald cannot show she was qualified for FMLA leave on June 13, 2006 because she has failed to present sufficient evidence to show that she suffered from a serious health condition that rendered her unable to perform the functions of her job. Specifically, HNB contends that Reinwald's FMLA claim fails because she has not submitted medical evidence to meet this requirement, such as an affidavit from her physician.

Reinwald does not cogently respond to HNB's argument. Instead, she contends that if HNB "doubted the veracity or seriousness of Ms. Reinwald's illness, it should have requested medical certifications." Mem. in Opp'n. (Doc. 25) at 9.

The FMLA defines a "serious health condition" as:

an illness, injury, impairment, or physical or mental condition that involves–

(A) inpatient care in a hospital, hospice, or residential medical care facility; or

(B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11).[2]

---

[2] The Department of Labor has issued regulations which further explain what constitutes a "serious health condition." At the time of Reinwald's termination, the applicable regulation provided in part as follows:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
> . . . .
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
> . . . .
> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).
> . . . .

29 C.F.R. § 825.114 (2006). Neither side in this conflict discusses or develops arguments concerning the impact of this regulation on this case.

HNB cites no authority for the proposition that medical testimony is required to establish a serious health condition for purposes of FMLA liability. Nonetheless, several courts have discussed the role of medical evidence in this context. *See, e.g., Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 500 (7th Cir. 1999) (affirming summary judgment where the plaintiff failed to present medical evidence demonstrating serious health condition; the plaintiff's self-serving affidavit insufficient); *Divers v. Metropolitan Jewish Health Sys.*, No. 06-cv-6704(RRM)(JMA), 2009 WL 103703, at *20 (E.D.N.Y. Jan. 14, 2009) (summary judgment granted based in part upon complete lack of evidence, including lack of medical evidence, to establish serious health condition; the plaintiff's self-serving affidavit and deposition testimony insufficient); *Mainor v. Bankfinancial F.S.B.*, No. 03 C 7540, 2005 WL 551878, at *4 (N.D. Ill. Mar. 8, 2005) (summary judgment granted where the plaintiff failed to submit medical evidence to establish serious health condition; plaintiff's deposition testimony insufficient). *See also Bell v. Jewel Food Store*, 83 F. Supp. 2d 951, 959 (N.D. Ill. 2000) (in the absence of medical evidence, the plaintiff's testimony insufficient to establish that he was incapacitated). One court has opined that *Haefling* and *Bell* do not stand for the proposition that a doctor's testimony is required to establish that the medical condition exists; rather, such evidence is required to demonstrate the seriousness of the condition. *Phillips v. Quebecor World Rai, Inc.*, No. 04-C-330, 2005 WL 6126702, at *6 (E.D. Wis. Aug. 16, 2005).

Reinwald does not submit an affidavit from her treating physician or other medical expert. Rather, she relies on her deposition testimony and affidavit to establish the nature and severity of her medical condition. Reinwald's affidavit contains several

opinions that would typically require expert medical testimony to establish: she states she suffers from endometriosis, Reinwald Aff. ¶ 2; she defines endometriosis and describes its symptoms, *id.*; she opines that her endometriosis is "particularly severe," *id.* ¶ 3; she explains the nature and duration of the side effects of Lupron, *id.* ¶ 5; and she avers that on June 10, 12, and 13, 2006, she was "unable to work due to the severe debilitating pain from the Lupron injections," *id.* ¶ 6. HNB argues that Reinwald is not competent to render such opinions.

The Court does not question that Reinwald suffers from endometriosis. Indeed, the record reflects that in December 2005, Reinwald underwent surgery to help address her condition. Furthermore, Dr. Bryan indicated on a leave form that Reinwald would suffer intermittent episodes of pain from endometriosis which would render her incapacitated for one to three days at a time from February 10, 2006 through February 21, 2006. Reinwald Dep. Ex. 33. Nonetheless, this evidence is insufficient to establish that Reinwald's June 13, 2006 absence from work was due to a serious medical condition that rendered her unable to perform the functions of her job. According to Reinwald's lay opinion, her severe debilitating pain was caused by a Lupron injection she received sometime earlier in June 2006. Reinwald is not competent to offer such an opinion. Competent medical evidence would be required to establish that: (1) one of Lupron's side effects is severe pain; (2) the pain Reinwald experienced on June 13, 2006 was the result of a Lupron injection; and (3) the pain Reinwald suffered as a result of the Lupron injection was sufficiently severe to render her unable to work. Without such medical evidence, Reinwald cannot establish that she was unable to work on June 13, 2006 as a result of a serious medical condition. For this reason, HNB is entitled to

summary judgment in its favor as a matter of law.

## B. Notice

HNB next argues that Reinwald is not entitled to FMLA protection because she failed to provide HNB notice that her absence from work on June 13, 2006 was FMLA-related until it received her attorney's demand letter on May 27, 2008.[3] Reinwald contends that she did, in fact, provide timely notice to HNB when she called HNB's attendance line three times on June 13, 2006. HNB maintains it is undisputed that it never received Reinwald's attempted calls.

Reinwald argues that a genuine issue of material fact exists as to whether HNB received her June 13, 2006 telephone calls. In support of this proposition, Reinwald relies on *Barrett v. Detroit Heading, LLC*, 311 Fed. Appx. 799 (6th Cir. 2009).

The plaintiff in *Barrett* suffered from the labile variety of hypertension. On November 3, 2004, the plaintiff was absent from work because his blood pressure

---

[3] The FMLA's implementing regulations describe when and how an employee is required to provide notice to her employer of the need for FMLA leave:

> (a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.
>
> (b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means. Notice may be given by the employee's spokesperson (e.g., spouse, adult family member or other responsible party) if the employee is unable to do so personally. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303 (2006).

measured 180/110, which qualified as a "hypertensive urgency." The defendant terminated the plaintiff's employment two days later on the basis of his absence. As in the instant case, the plaintiff in *Barrett* had received progressive discipline and was one unexcused absence away from being terminated when he was absent from work on November 3, 2004.

One of the issues in *Barrett* was whether the defendant had received a telephone facsimile ("fax") from the plaintiff's physician excusing the plaintiff's absence from work. The plaintiff was in his physician's office at the time and witnessed the physician's secretary fax the excuse slip. The secretary had faxed excuse slips for the plaintiff on prior occasions, and had the defendant's telephone number on file. Telephone records confirmed that a call was made from the physician's fax number to the defendant's fax number. Although the physicians's fax machine did not produce confirmation pages, the record included a copy of the excuse slip with the word "FAXED" and the secretary's initials. There was no indication in *Barrett* that the physician's fax machine was defective or unreliable.

At trial, the defendant's vice president of human resources, to whom the fax had been addressed, testified that she did not receive the medical excuse slip. She conceded, however, that she may have lost the fax.

The district court in *Barrett* denied the defendant's motion for judgment as a matter of law, and the jury returned a verdict in favor of the plaintiff. The court of appeals affirmed, in part, because it found that "the jury could have reasonably concluded that Hampton *did* receive the fax but either misplaced it or ignored it." *Barrett*, 311 Fed. Appx. at 793 (emphasis in original).

Here, Reinwald's cell phone records show that she placed three one-minute calls to HNB's attendance line on June 13, 2006. Reinwald testified at her deposition that she called the attendance line three times on that date because the cell phone she was using was not getting good reception, had a bad antenna, and sometimes dropped calls. Reinwald Dep. at 219-20. In her affidavit, Reinwald states that she "left messages that I would be unable to work because of the pain and requested FMLA leave." Reinwald Aff. ¶ 6.[4]

HNB avers that it has no record of receiving Reinwald's calls on June 13, 2006. Howard Decl. ¶¶ 7-9. Sally Howard explains, "[t]he attendance line was routinely checked at the beginning of each shift, and any calls from employees were recorded on a log sheet maintained in the ordinary scope of HNB's business." *Id.* ¶ 8. "Although the attendance log sheet shows that other employees called off work on June 13, 2006, it indicates that Plaintiff never left any message." *Id.* ¶ 9. The attendance tracking log sheet attached to Howard's declaration shows no record of a call from Reinwald on June 13, 2006. *Id.*, Ex. 1.

In *Barrett*, the plaintiff witnessed his physician's secretary send the fax, phone records confirmed a call between the physician's fax machine and defendant's fax machine, and the physician's files contained a copy of the excuse slip marked "FAXED" and initialed by the physician's secretary. Moreover, the defendant's vice president of human resources admitted that she may have lost the fax. Additionally, there was no suggestion in *Barrett* that the physician's fax machine was defective or unreliable.

In the instant case, Reinwald's telephone records show only that she placed calls

---

[4] Reinwald also maintains that it was her practice to specifically mention "FMLA" when she requested leave due to pain from her endometriosis. Reinwald Aff. ¶ 7.

HNB's attendance line three times on June 13, 2006. It does not establish that the calls were received. Similarly, her testimony shows only that she placed the calls and believed that at least one of the calls went through. Significantly, Reinwald acknowledges that the cell phone she was using was unreliable. Given this fact, there is no basis to presume that because Reinwald placed the calls, the calls were received by HNB's attendance line. In addition, there is no concession on the part of HNB that it might have "misplaced" a message from Reinwald.

Despite these differences, however, the facts of the instant case are sufficiently similar to those of *Barrett* that the Court declines to grant summary judgment in HNB's favor on the ground of lack of notice.

### C. Honest belief doctrine

Lastly, HNB contends that it is entitled to summary judgment in its favor because Reinwald has offered no evidence to challenge HNB's "honest belief" defense. HNB asserts that it terminated Reinwald's employment because it had an honest belief that Reinwald's absence from work on June 13, 2006 was a "no-call/no-show," regardless of whether Reinwald had called the attendance line. Reinwald acknowledges that if she had failed to call in her absence on June 13, 2006, her termination would have been proper pursuant to HNB policy in light of her previous discipline. Reinwald Dep. at 202-03.

"An employer does not violate the FMLA by terminating an employee if the employer held an honest belief based on particularized facts that the employee abused that leave." *Stanley v. Volvo Parts N. Am.*, No. 2:07-cv-602, 2008 WL 2473658, at *4 (S.D. Ohio June 17, 2008) (citing *Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894, 903

(S.D. Ohio 1999); *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Id.* (quoting *Smith*, 155 F.3d at 807). It is not the Court's job to "second guess the business judgment of the employer, but simply evaluate 'whether the employer gave an honest explanation of its behavior.'" *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). The honest belief defense applies to both interference and retaliation claims brought under the FMLA. *See Stanley*, No. 2:07-cv-602, 2008 WL 2473658, at *4; *Weimer v. Honda of Am. Mfg., Inc.*, No. 2:06-cv-844, 2008 WL 4332525, at *2 (S.D. Ohio Sept. 17, 2008).

In the instant case, HNB maintains that it terminated Reinwald's employment based on an honest belief that she was a no-show/no-call on June 13, 2006. HNB also avers that it reasonably relied on particularized facts, namely, the lack of any record that Reinwald called the HNB attendance line on that date.

Reinwald suggests that Howard should have checked the attendance line herself. The Court disagrees, as the honest belief doctrine does not require a termination decision to be optimal or that the employer left no stone unturned. *Stanley*, No. 2:07-cv-602, 2008 WL 2473658, at *4. Howard reasonably relied on HNB's attendance tracking log in concluding that Reinwald's absence on June 13, 2006 was a no-call/no-show. Reinwald also maintains Howard should have allowed her to use the office computer to access her cell phone records on the Internet. Yet Reinwald concedes that Howard told her that she might get her job back if she provided proof that

she called the attendance line. Reinwald Dep. at 232. This demonstrates HNB's good faith. Reinwald declined Howard's invitation, however, because she was angry and did not believe she could get her job back. *Id.* Indeed, Reinwald did not submit her cell phone records to HNB until almost two years after her termination, when her attorney sent a demand letter to HNB. HNB should not be penalized for Reinwald's failure to respond to Howard's invitation within a reasonable time.

In sum, the Court finds that HNB has come forward with evidence demonstrating that it terminated Reinwald's employment because it had an honest belief that Reinwald's absence from work on June 13, 2006 was a "no-call/no-show." Reinwald has failed to rebut that evidence. Accordingly, for this additional reason, HNB is entitled to summary judgment on Reinwald's FMLA claim.

### IV. Disposition

Based on the above, the Court **GRANTS** HNB's summary judgment motion (Doc. 22).

The Clerk shall enter final judgment in favor of defendant HNB, and against plaintiff Reinwald, dismissing this action in its entirety with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Doc. 22 from the Court's pending motions list.

**IT IS SO ORDERED.**

  /s/ Michael H. Watson
  _____
  **MICHAEL H. WATSON, JUDGE**
  **UNITED STATES DISTRICT COURT**